IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

UNITED STATES OF AMERICA,    )
                             )
          Plaintiff,         )
                             )
     v.                      )          No. 12-cr-30081
                             )
ALAN LAUGHLIN,               )
                             )
          Defendant.         )

OPINION

RICHARD MILLS, U.S. District Judge:

The Defendant's Motion for Disclosure of Sentencing

Recommendation is denied for the following reasons.

I.

The Defendant's Motion raises issues related to Federal Rule of

Criminal Procedure 32 and the disclosure of (1) the probation officer's

sentencing recommendation, and (2) the probation officer's rationale for

making such a recommendation.

In the middle of the twentieth century, probation officers prepared

presentence investigation reports (PSRs), but disclosure of the PSR to

1

the parties was limited, and varied across districts. *See* Fed. R. Crim. P. 32, Advisory Comm. Note (1966) ("Practice in the federal courts is mixed, with a substantial minority of judges permitting disclosure while most deny it.").

In 1974, Federal Rule of Criminal Procedure 32 was amended, and disclosure of the PSR was made authorized, with limited exceptions, including a prohibition on releasing the probation officer's recommendation. *See* Fed. R. Crim. P. 32, Advisory Comm. Note (1974) ("Subdivision (c)(3)(A) requires disclosure of presentence information to the defense, exclusive of any recommendation of sentence. The court is required to disclose the report to defendant or his counsel unless the court is of the opinion that disclosure would seriously interfere with rehabilitation, compromise confidentiality, or create risk of harm to the defendant or others.").

The U.S. Court of Appeals for the Seventh Circuit has explained that "[a]t the time of its enactment, the purpose behind [limiting the disclosure of the sentencing recommendation] was to allow probation officers the opportunity to provide a candid assessment of the defendant

to the court and to protect the effectiveness of the probation officer in the supervisory context." *United States v. Peterson*, — F.3d — , 2013 WL 1235627 (7th Cir. Mar. 28, 2013) (citing Fed. R. Crim. P. 32, Advisory Comm. Note (1974) ("Any recommendation as to sentence should not be disclosed as it may impair the effectiveness of the probation officer if the defendant is under supervision on probation or parole.")).

By the early 1980s, this exception was on the chopping block. Since the 1950s and 1960s, momentum had been gathering for a wide-ranging overhaul of federal criminal law. *See* U.S. Sentencing Commission, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* 1-2 (June 18, 1987). Numerous groups and entities had been studying the issue, including the American Law Institute, which promulgated the Model Penal Code; the American Bar Association (ABA), which issued many studies and reports; and the National Commission on Reform of Federal Criminal Laws (Brown Commission), which was led by former Governor of California Edmund G. "Pat" Brown, Sr., and which issued its Final Report in 1971. *See id.*

The efforts to overhaul the federal criminal justice system were concentrated in the Committee on the Judiciary, in the U.S. Sentate, under the leadership of Sentators Edward M. Kennedy and Strom Thurmond. The Committee's efforts at comprehensive reform began in earnest in the mid-1970s.

In September of 1981, Senator Thurmond, introduced another reform bill. *See* Criminal Code Reform Act of 1981, S. 1630, 97th Cong. (1981). In the bill, Rule 32 was to be amended so that a probation officer's recommendation would not be confidential. *See id.* at § 111(r)(6) ("The Federal Rules of Criminal Procedure are amended as follows: . . . Rule 32 is amended— . . . by deleting 'exclusive of any recommendations as to sentence' in subparagraph (c)(3)(A)").

On September 28, 1981, the Committee on the Judiciary held a hearing on S. 1630. Some of the testimony related to the confidentiality of a probation officer's sentencing recommendation.

The American Bar Association (ABA) was represented by Professor William Greenhalgh, Georgetown University, and George C. Freeman,

Jr.[1] *Reform of the Federal Criminal Laws: Hearing on S. 1630 Before S. Comm. on the Judiciary*, 97th Cong., Part XVI 11821 (1981).

In their written statement, Professor Greenhalgh and Mr. Freeman stated the following: "S. 1630 contains a proposed amendment to Rule 32 of the federal Rules of Criminal Procedure that the fundamental recommendation as to sentence be made part of the presentence report released to the defendant. ABA supports this position." *Id.* at 11871.

The Judicial Conference of the United States was represented by Judge Gerald B. Tjoflat. *Id.* at 11911. At that time, Judge Tjoflat was the chair of the Judicial Conference's Committee on the Administration of the Probation System. *Id.* In his written statement, Judge Tjoflat stated the following:

> Rule 32(c)(3)(A) of the Federal Rules of Criminal Procedure presently requires disclosure of the presentence report "exclusive of any recommendation of sentence." I recommend that this language be included in your bill. Disclosure of the presentence report is absolutely necessary to ensure that sentences are not based on factually inaccurate information and to allow the defendant a real opportunity to challenge the accuracy of the report. The specific recommendation of the probation officer is, however, a matter of judgment rather than fact.

---

[1] Prof. Greenhalgh was the chair of the ABA's Committee on Legislation, Criminal Justice Section, and Mr. Freeman was the chair of the ABA's Ad Hoc Committee on the Criminal Code, Section of Corporation, Banking, and Business Law. *Reform of the Federal Criminal Laws: Hearing on S. 1630 Before S. Comm. on the Judiciary*, 97th Cong., Part XVI 11821 (1981).

> Disclosure of this recommendation may place the court in the position of not only explaining on the record the reasons for imposing a particular sentence, but, also the reasons for imposing a sentence other than that recommended by the probation officer.[2]

*Id.* at 11922.

Eventually, the position of the Judicial Conference and Judge Tjoflat was more persuasive than that of the ABA, and S. 1630 was amended to reflect the position of the Judicial Conference. *See* S. Rep. 98-225 (1983). Although S. 1630 was reported to the full Senate in 1982, it was not enacted.

---

[2] Judge TJoflat's concerns were prophetic. In districts where the sentencing recommendations are routinely released to parties, they can become a distraction. The following example from California is illustrative:

> A judge in the Central District is considering not disclosing probation officers' recommendations to the parties because they have become such a focus of attention at sentencing: "I find it hard to get people to focus on what I've said about my reasons—they're so glued to what they view as a promise from probation. They say, 'But probation said,' and I want to say, 'But I'm the judge.'"

Nancy Glass, *The Social Workers of Sentencing? Probation Officers, Discretion, and the Accuracy of Presentence Reports Under the Federal Sentencing Guidelines*, 46 No. 1 Crim. L. Bull. Art. 2 (Jan.-Feb. 2010). *See also* Opening Brief of Defendant-Appellant at 21-22, *United States v. Anthony Pendleton*, No. 10-50338 (9th Cir. March 15, 2011) & Reply Brief of Defendant Appellant at 2-3, *United States v. Anthony Pendleton*, No. 10-50338 (9th Cir. July 14, 2011) (arguing that district court must have acted inappropriately because, although the court's reasons mirrored those of the probation officer, the court imposed a high-end sentence instead of the low-end sentence recommended by the probation officer).

In the next Congress, a new bill, S. 1762, was introduced and reported to the full Senate in 1983.  In its Report, the Committee on the Judiciary had the following to say regarding the disclosure of a probation officer's recommendation:

> Subdivision (c)(3)(A) of Rule 32 has been amended by Section 205(a)(6) of the bill to assure that the information relating to the requirements of revised subdivision (c)(2) contained in the presentence report are made available to the defendant but that the probation officer's final recommendation as to sentence is not made available. This assures that the Defendant will receive information such as the probation officer's conclusions as to which guidelines apply to the defendant and whether there are aggravating or mitigating circumstances that may indicate that the sentence should be outside the guidelines, but will not receive the final sentencing recommendation of the probation officer.  The latter provision represents a committee amendment in the 97th Congress to S. 1630 made at the suggestion of Judge Tjoflat who expressed concern that disclosure of the final sentencing recommendation might inhibit the probation officer in making the recommendations.

S. Rep. 98-225 (1983) (footnote omitted).

Eventually, S. 1762 was passed in early 1984, as part of the Comprehensive Crime Control Act of 1984.[3]  The law prohibited the distribution of "any final recommendation as to sentence" to the parties. *See* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, 2014, § 215(a)(6) (1984).

---

[3]  This Act included the Armed Career Criminal Act, the Sentencing Reform Act of 1984, and the Bail Reform Act of 1984.

In 1993, the ABA House of Delegates approved standards for sentencing. The ABA concluded that "[t]he rules should prohibit confidential sentencing recommendations." ABA Standards for Criminal Justice: Sentencing, 3d ed., 188, Standard 18-5.7 (1994).

In 1994, Rule 32 was amended, to allow for the disclosure of the sentencing recommendation of a probation officer. *See* Fed. R. Crim. P. 32, Advisory Comm. Note (1994) ("Under that new provision . . . the court has the discretion (in an individual case or in accordance with a local rule) to direct the probation officer to withhold any final recommendation concerning the sentence. Otherwise, the recommendation is subject to disclosure.").

The current version of Rule 32 states the following: "By local rule or by order in a case, the court may direct the probation officer not to disclose to anyone other than the court the officer's recommendation on the sentence." Fed. R. Crim. P. 32(e)(3).

In this Court, the Local Rules provide that "[u]nless otherwise ordered by the presiding judge, the probation officer's recommendation on the sentence will not be disclosed." C.D. Ill. L.R. 32.1(D).

## II.

Several weeks ago, the U.S. Court of Appeals for the Seventh Circuit issued its opinion in *United States v. Peterson*, 2013 WL 1235627. In *Peterson*, the Court of Appeals held that a defendant's due process rights are not violated when a probation officer's makes a confidential sentencing recommendation to the sentencing judge. *Id.* at 6. The only caveat is that a recommendation (and its justification) should not include any information that is not part of the Presentence Investigation Report that was disclosed to all parties. *See id.* ("[D]ue process requires the full disclosure of all facts on which the probation officer's sentencing recommendation relies.").

However, the Court of Appeals indicated some concern that keeping sentencing recommendations confidential might create the appearance of impropriety:

> The policy question nevertheless remains whether disclosure of a probation officer's sentencing recommendation is desirable even if not constitutionally compelled. A blanket rule against disclosure of a probation officer's sentencing recommendation, though explicitly endorsed by several of the district courts in this circuit, is far from universal. Many district courts favor releasing the sentencing recommendation to the parties and others leave disclosure to the district judge's discretion. The American Bar Association Criminal Justice

Section has adopted a standard providing that all rules of procedure should prohibit confidential sentencing recommendations.

Concern about an absolute non-disclosure rule stems from a desire to maintain openness in the sentencing process. Because so few defendants proceed to trial, the sentencing hearing is often a defendant's first and last opportunity to present argument to the court. And probation officers play an important role in that process. We have often explained that a probation officer acts as an arm of the court during sentencing and does not take on the role of an adversary. But we have also urged district judges, U.S. Attorneys, and probation officers to take steps to prevent the perception that probation officers are "surrogate prosecutors." To the extent confidential sentencing recommendations create the appearance of hidden information or a secret tilt in the government's favor, we offer the view that our federal sentencing procedures might be better served by allowing the parties to evaluate any analysis that might form the basis of a judicial determination.

We do not suggest that district courts should necessarily release confidential sentencing recommendations in all cases and under all circumstances. But the federal rules allow courts the opportunity to make these determinations on a case-by-case basis. If a district court is concerned about a probation officer's ability to produce a forthright assessment because of a potential supervisory relationship or a case-specific factor, the court could request that the probation officer submit the sentencing recommendation to the court confidentially. An order from the district court requiring confidentiality would produce the added benefit of informing the defendant that a confidential recommendation exists, something that could remain a mystery to defendants when the court does not reference the recommendation during sentencing. If, on the other hand, no such concerns exist because of the structure of the probation office or because of the nature of the case, the district court could direct that the parties receive all portions of the PSR, including the probation officer's sentencing recommendation. This practice could allow the defense an opportunity to see and comment on the recommendation and independently confirm that all facts forming the basis for the recommendation are contained elsewhere in the report.

*Id.* at *7-*8 (citations, quotation marks, and alterations omitted).

On April 1, 2013, an administrative attorney with the Court of Appeals transmitted a copy of the *Peterson* decision to all district judges, clerks of court, and chief probation officers in the Circuit, stating that the Court of Appeals requested that the administrative attorney bring Part II.B.2. of the opinion to the attention of the recipients.[4] This Court studied the opinion upon its receipt, and has been reflecting on the appropriate course of action since that time.

## III.

On April 16, 2013, the Assistant Federal Public Defender in this case filed the Motion for Disclosure of Sentencing Recommendation. In the Motion, counsel reviewed the *Peterson* opinion.

In the Motion, counsel wrote that the Court of Appeals "approvingly cited an American Bar Association standard providing that all rules of procedure 'should prohibit confidential sentencing recommendations.'" Motion for Disclosure of Sentencing Recommendation. Counsel further stated the following:

---

[4] Judges of this Court receive emails of this nature from the Court of Appeals about six times per year. Usually, the Court of Appeals is disseminating recommendations that appear as dicta in published opinions.

[A] policy of disclosure is desirable in two key respects. First, disclosure would help ensure that probation officers are not perceived as surrogate prosecutors. Confidential recommendations may undermine a perception of objectivity by creating the appearance of hidden information or a secret tilt in the government's favor. Second, the disclosure of an officer's recommendation ensures that the defense has an opportunity to see and comment on the recommendation and independently confirm that all facts forming the basis for the recommendation are contained elsewhere in the report.

In order to promote the perception of objectivity, to subject the facts in the case to the rigors of adversarial testing, and to ensure openness in criminal sentencing, the probation office's sentencing recommendation should be disclosed to the parties. Accordingly, Mr. Laughlin respectfully requests that the Court direct the United States Probation Office to disclose (A) the sentence that the United States Probation Officer is recommending; and (B) the basis for the recommended sentence.

*Id.* (citations and quotation marks omitted).

The Motion did not contain any case-specific facts. Rather, it appears to be a facial challenge to both the usual practice of this Court and the Local Rule.

## IV.

After carefully considering the authorities cited in this Opinion, the Court of Appeals' decision, and the Defendant's Motion for Disclosure of Sentencing Recommendation, the Court concludes that the appropriate course is to keep the probation officer's sentencing recommendation, and the rationale, confidential.

## A.

As a preliminary matter, the Court notes that this issue is really one of judicial policy. The Court of Appeals clearly viewed it as such, given its decision to label the issue a "policy question," *Peterson*, at *8, and the decision to disseminate the dicta contained in *Peterson* to all district judges, clerks, and chief probation officers. This issue probably would have been an agenda item at the next Judges' Meeting of this Court, even without the filing of any Motion. Representatives from the U.S. Attorney's Office and the Federal Public Defender's Office attend those meetings, and would probably have been invited to share their views on Local Rule in light of *Peterson*. That probably would have been the most appropriate forum to address the issue, rather than piecemeal litigation across the district.

However, the issue is now before the Court, and counsel has raised a facial challenge. Therefore, a determination must be made regarding how the sentencing recommendation will be handled in this case, and in future cases.

## B.

The Court notes that the recommendations made in *Peterson* were somewhat equivocal. *Id.* ("To the extent confidential sentencing recommendations create the appearance of hidden information or a secret tilt in the government's favor, we offer the view that our federal sentencing procedures might be better served by allowing the parties to evaluate any analysis that might form the basis of a judicial determination.").

## C.

## 1.

The Court of Appeals discussed a number of factors that would need to be analyzed by the district court before making a decision: (1) the probation officer's "potential supervisory relationship," (2) "the structure of the probation office," and (3) "the nature of the case." *Id.*

The Court of Appeals recognized that maintaining the confidentiality of the recommendation might be appropriate when the Court is "concerned about a probation officer's ability to produce a forthright assessment because of a potential supervisory relationship or a

case-specific factor."  *Id.*; *see also* Fed. R. Crim. P. 32, Advisory Comm. Note (1974) ("Any recommendation as to sentence should not be disclosed as it may impair the effectiveness of the probation officer if the defendant is under supervision on probation or parole.").

2.

The Court concludes that the potential for a future supervisory relationship exists in nearly all sentencing proceedings in this Division of the Court.  In order to establish this point, some background is necessary.

The Central District of Illinois covers forty-six counties, and most of these counties are rural.  The Court has four divisions: Springfield, Urbana, Peoria, and Rock Island.  Probation officers are based in each division of the Court, and the probation officers in each division are assigned to work in either the <u>investigation</u> unit or the <u>supervision</u> unit. <u>Investigation</u> officers write presentence investigation reports (PSRs), while <u>supervision</u> officers supervise defendants who have been released on bond, and offenders who are serving terms of supervised release or

probation.  Both investigation and supervision officers prepare bond reports.

3.

Throughout the district, it is not uncommon for officers to have had experience working in both units.  Many supervision officers have previously served as investigation officers.

All of the officers serving in the supervision unit of this Division have written PSRs for new sentencings, and a majority of these officers have previously served in the investigation unit.  Some of these officers were in the investigation unit for a number of years, preparing hundreds of PSRs during their tenure.

This creates a dilemma, because there is a significant likelihood that an officer preparing a PSR today may be supervising the offender in five, ten, or fifteen years.  It is not unusual for an officer writing a PSR and making a sentencing recommendation to end up supervising the offender at a later date.

This situation is heightened for the probation officer who oversees the supervision unit.  In this Division, that particular officer produced a

significant number of PSRs at an earlier stage of his career, and many of these offenders are now being supervised by this officer's subordinates. In this Division, it is not unusual for the officer overseeing the supervision unit to meet with the line officer and the offender when there are compliance issues.

In making a sentencing recommendation, probation officers provide cold, hard numbers which may or may not be imposed by the judge. They also provide an unvarnished assessment of the defendant and the offense in rendering their justification for the recommendation.

In these instances, the probation officers' ability to assist the offender adjust back into society following incarceration would be degraded if the offender knew the sentencing recommendation (and rationale) that the officer had provided years earlier to the sentencing judge. Also, the risk borne by probation officers in this situation would be elevated, making the job even more dangerous than it already is.[5]

---

[5] In calendar year 2012, there were 68 instances where a probation officer was subjected to intimidation or threats. *See* Jed Blankenship, "OPPS Releases SIRS Safety Report Data for Calendar Year 2012," *News and Views: A Biweekly Newsletter of the United States Probation and Pretrial Services System* (March 18, 2013).

This situation could impact the candor of the probation officer's recommendation.

Even if an investigation officer never works in the supervision unit, there are still potential issues. Investigation officers are involved in some supervisory activities in the field. For example, officers of the investigation unit in this Division are members of the probation office's search team, conducting surprise searches at the residences of offenders. Revealing sentencing recommendations could increase the tension when the author of the PSR arrives with others to search the home.

Given, the size, structure, and practices of the probation office in this Division of the Court, the undersigned concludes that the disclosure of the probation officer's recommendation would likely negatively influence the ability of the probation office to adequately supervise offenders upon their release from the Bureau of Prisons.

4.

Now the Court will briefly address sentencing recommendations in the revocation process. When there is a revocation hearing, the

supervision officer prepares a Violation Memorandum that is available to all parties, and also submits to the Court a confidential sentencing recommendation, with a rationale for the recommendation.

Generally speaking, if the current term of supervision stays in effect, or if any additional term of supervision is imposed, the same supervision officer will generally supervise the offender.

Therefore, in the revocation context, rather than just a "<u>potential</u> supervisory relationship," there is both a <u>current</u> supervisory relationship at the time of the hearing, and a <u>likely</u> supervisory relationship in the future.

5.

Finally, the Court notes that in this Division there are many offenders who have multiple federal convictions, and multiple federal revocations. These recidivism issues create repeat players, and increase the likelihood that the author of the PSR will interact with the offender again at some point during the officer's career, possibly in a supervisory capacity.

6.

Today a probation officer carefully collects information, writes a report, and makes a candid sentencing recommendation. Tomorrow, the officer sits in the courtroom in formal business attire at the sentencing hearing. Down the road, the same officer may be crossing the threshold of the offender's residence with a gun, badge, ballistic vest, and no clue what is waiting for him or her inside.

The undersigned chooses officer safety and effective supervision over nebulous concerns regarding the potential for the appearance of impropriety.

In nearly twenty-eight years on this Court, I have had the pleasure of working with many probation officers in this District. I have found them to be among the hardest-working, dedicated, trustworthy, and neutral public servants to be found. Their recommendations include solely that information which is found within the four corners of the PSR that was disclosed to the parties.

These probation officers are truly the arm of the Court, and they routinely find themselves in very challenging circumstances enforcing the Court's orders. They take an oath, just as I do, just as my law clerks do.

## D.

The Court has concerns that the case-by-case approach discussed by the Court of Appeals may not be workable, and probably would elongate the sentencing process by weeks or months.

In *Peterson*, the Court of Appeals noted that disclosure of the sentencing recommendation would give the defense the opportunity to comment on the sentencing recommendation. This process could lead to additional rounds of disclosures, objections, and revisions.

## E.

The Court finds no reason to cease a practice that is authorized by the Federal Rules of Criminal Procedure and that has been uniformly upheld on appeal. The Court finds the positions of the Federal Public Defender's Office and the ABA unpersuasive.

*Ergo,* the Defendant's Motion for Disclosure of Sentencing

Recommendation is DENIED.

IT IS SO ORDERED.

ENTER: April 23, 2013

FOR THE COURT:             */s/ Richard Mills*
_____
                    Richard Mills
              United States District Judge